CHARLES B. PRICE v. IRVIN CONLEY

No. 7127DC611

(Filed 17 November 1971)

1. **Landlord and Tenant § 18— default in payment of rent increase — action by landlord — instructions**

    In a lessor's action to recover possession of the leased premises on the ground that the tenant had failed to pay the $5.00 monthly increase in the rent, portions of the charge which referred to an "option" to renew the lease, when in fact no such option existed, was misleading and therefore erroneous.

2. **Landlord and Tenant § 18— default in payment of rent increase — action by landlord — evidence relating to waiver of default — instructions — issues**

    In a lessor's action to recover possession of the leased premises on the ground that the tenant had failed to pay the $5.00 monthly increase in the rent, the trial court's failure to explain and apply the law to evidence which showed (1) that the landlord continued to accept the old rent for 10 consecutive months and (2) that the lessee, upon being told of the arrears in the rent, tendered to the landlord the full amount by which he was in arrears, which amount the landlord accepted, *held* reversible error, since it required the issue of breach of the lease to be answered in favor of the landlord.

Price v. Conley

3. **Rules of Civil Procedure § 51— instructions — application of law to the evidence**

The trial judge is required to declare and explain the law arising on the evidence given in the case. G.S. 1A-1, Rule 51(a).

4. **Landlord and Tenant § 18— lessee's breach of rent obligation — waiver by landlord**

A provision in a lease providing for termination at the option of the lessor upon breach of the lessee's obligation to pay rental is not self-executing and may be waived by the lessor.

APPEAL by defendant from *Mull, District Judge,* 12 April 1971 Session of District Court held in CLEVELAND County.

Action to recover possession of real property. In his complaint, filed 18 September 1970, plaintiff alleged that defendant was his tenant at will and that defendant had been given reasonable notice to vacate but had refused to do so. Defendant answered and alleged a recorded lease from plaintiff's predecessors in title, and in a further answer defendant alleged estoppel by reason of plaintiff's acceptance of sixteen monthly rental payments under the lease. A copy of the recorded lease, dated 26 July 1967, was introduced in evidence. By this instrument plaintiff's mother and her husband, who were then the owners, leased a store building in Shelby, N. C., then occupied by defendant, to defendant as lessee.

" . . . for a period of two more years, same beginning the 26th day of July, 1967 and ending on August 10th, 1969, at a rent of $35.00 per month. Also the lessors agree to renew lease for an additional 10 years, beginning on August 10th, 1969 and ending on August 10th, 1979, for the rent of $40.00 per month. The lessee agrees to accept said additional 10 year lease.

"Should the said monthly rental payment for any one month be as much as 15 days in arrears, the lessors shall have the right to terminate or end this lease and retake possession of the premises."

Plaintiff testified: After he acquired title as devisee under the will of his mother, who died 5 January 1969, he went by the store each month until June 1970 and picked up a monthly rental check in the amount of $35.00. He received no $40.00 checks, and on 1 June 1970 he informed defendant "that he was eight months behind on the new rent" and asked him to vacate,

but defendant refused to do so. Since 1 June 1970 he had not been by the store building to pick up any checks and had received no further checks from defendant.

Defendant testified: As a result of the lease he paid plaintiff's mother $35.00 on the first or second day of every month until she passed away. Thereafter he paid plaintiff $35.00 per month on the first or second day of every month until 1 June 1970. At the time the lease was drawn he knew that the rent was to be increased from $35.00 to $40.00 per month on 10 August 1969, but he later forgot that fact. Plaintiff never said anything about the amount of the rent until 1 June 1970, when plaintiff told defendant's son to vacate the premises. Plaintiff never told defendant directly to vacate, but did tell his son to do so. On 2 June 1970 he mailed plaintiff a check for $55.00, "the remainder he claimed I was behind in my rent." Since 1 June 1970 he had mailed plaintiff a check in the sum of $40.00 on the first or second day of each month, because plaintiff would not come and get them.

Defendant's son testified: He worked for his father in the store, kept books, and wrote checks. He addressed and mailed the checks in the amount of $40.00 to plaintiff after 1 June 1970, and none of the letters were ever returned. He did not have a canceled check showing that $40.00 had been paid plaintiff.

The following issues were submitted to the jury:

"1. Did the plaintiff and the defendant have a contract for the lease of the premises as alleged in the Complaint?

"ANSWER: _____.

"2. Did the defendant wrongfully breach said Contract as alleged in the Complaint?

"ANSWER: _____."

The parties stipulated that the answer to the first issue should be in the affirmative, and that if the jury should answer the second issue "yes," "then the plaintiff is entitled to possession of the premises as provided by law," but if the answer is "no," "that they go ahead and proceed under the contract as prior to this date." The jury answered both issues in the affirmative. From judgment that plaintiff recover possession of the property, defendant appealed.

*Horn, West & Horn, by C. A. Horn for plaintiff appellee.*

*Yelton & Lamb, by Robert W. Yelton for defendant appellant.*

PARKER, Judge.

[1]  In his charge the judge instructed the jury that the plaintiff had alleged that defendant breached the lease contract "by failing to exercise his option to renew the lease." No such allegation appears in the complaint. Further, the recorded lease, copy of which was introduced in evidence, contains no *option* to renew. On the contrary, by its express terms the lessors "agree to renew" and the lessee "agrees to accept" the additional ten-year term which began on 10 August 1969. This gave no option to either party, but created an agreement binding upon both.

The judge also instructed the jury "that in cases where there is a lease with a renewal clause, nothing more appearing to be done other than to increase the amount of the rent, that if the amount of the rent is not increased at the time called for in the contract, then they have not complied with the terms of the contract." Thereafter, in the mandate portion of the charge, the judge instructed the jury as follows:

> "Finally, ladies and gentlemen, the Court instructs you that if the plaintiff has satisfied you from the evidence and by its greater weight that the plaintiff and defendant had a contract, which they agreed they had, and that the defendant has failed to comply with the terms of the contract by increasing the payments on August 10, 1969, it would be your duty to answer this second issue, 'Yes.' Otherwise, if the plaintiff has not so satisfied you, you would answer it 'No.' "

[1-3]  Appellant's exceptions and assignments of error to the above-quoted portions of the charge must be sustained. It was misleading to refer to an "option" to renew the lease, when no such option existed and therefore exercise or failure to exercise a renewal option could not have been in any way involved in the litigation. Moreover, considering the charge as a whole, the judge failed properly to "declare and explain the law arising on the evidence given in the case," as he was required to do by G.S. 1A-1, Rule 51(a). Under the charge as given, the jury

could do nothing other than to answer the second issue in the affirmative, since all of the evidence established that defendant had failed to increase the amount of the monthly payment on 10 August 1969. However, there was also uncontradicted evidence from both parties that each month from August 1969, until June 1970, defendant had paid and plaintiff had quietly accepted a check for $35.00. Further, there was evidence, though contradicted, from which the jury could have found that promptly after the lease provision calling for the increase in the monthly rental was brought to defendant's attention, he had tendered to plaintiff his check for the full amount by which he was then in arrears and had thereafter tendered to plaintiff each month a check in the increased amount as called for by the recorded lease. The court's charge to the jury is completely devoid of any explanation of the law arising on this evidence.

[4] A provision in a lease for termination at the option of the lessor upon breach of the lessee's obligation to pay rental is not self-executing. Such a provision may be waived by the landlord, for whose benefit it was inserted, and he may elect to treat the lease as continuing in effect. Moreover, the purpose of such a provision is not to provide a forfeiture with which to surprise an unwary tenant, but to secure the landlord in his right to receive the rental called for in the lease. "Provisions for the forfeiture of a lease for nonpayment of rent, whether contractural or statutory, are considered in equity as securing the rent, and not as providing for the forfeiture of the lease where the tenant acts in good faith and pays promptly on demand." 49 Am. Jur. 2d, Landlord and Tenant, § 1034, p. 1002.

In the present case the plaintiff landlord, by quietly accepting monthly payments of rental in the amount of $35.00 for many months after August 1969, recognized the lease as continuing in effect and waived, not his right to collect monthly rental in the increased amount of $40.00 as called for in the lease, but his right to terminate the lease by reason of his lessee's past defaults. This waiver continued until the lessor made demand upon the lessee to pay the amount by which he was in arrears and until the lessee, after being given a reasonable opportunity to do so, should fail to make such payment. The trial court, by failing properly to declare and explain the law arising on the evidence presented in this case, committed prejudicial error entitling defendant to a new trial.

We note that the defendant's trial counsel made no objection to the form of the issues which were submitted to the jury and joined in a stipulation as to the type of judgment which should be entered depending upon the jury's answer to the second issue. Appellant was entitled, nevertheless, to have the issues decided by the jury under a charge from the court which correctly declared and explained the law arising on the evidence. For the errors above noted there must be a new trial, at which the case should be submitted to the jury upon such issues as shall arise upon the evidence then presented.

For errors in the charge, the judgment appealed from is reversed and defendant is entitled to a

New trial.

Judges MORRIS and GRAHAM concur.